1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 5/12/2010**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

LAURA GENS,

                    Plaintiff,

     v.

WACHOVIA MORTGAGE CORPORATION;
CAL-WESTERN RECONVEYANCE
CORPORATION; WORLD SAVINGS BANK,
FSB; WACHOVIA MORTGAGE, FSB; GOLDEN
WEST SAVINGS ASSOCIATION SERVICE CO.,
and DOES 1-20 inclusive,

                    Defendants.

Case Number CV10-01073 JF (HRL)

ORDER[1] DENYING PRELIMINARY
INJUNCTION

[re: docket no. 5]

## I. BACKGROUND

### A. Procedural Background

On February 26, 2010, Plaintiff Laura Gens ("Plaintiff") filed the instant action in the

Santa Clara Superior Court against Defendants Wachovia Mortgage Corporation, Cal-Western

Reconveyance Corporation, World Savings Bank, FSB, Wachovia Mortgage, FSB, Golden West

Savings Association Service Co., and Does 1-20, inclusive (collectively, "Defendants"), alleging

---

[1] This disposition is not designated for publication in the official reports.

1  violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq and the Real Estate

2  Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., and also asserting eleven state-

3  law claims for relief.  On the same date, the state court issued an *ex parte* temporary restraining

4  order ("TRO") enjoining Defendants from transferring ownership interest in the subject property

5  located at 4141 Old Trace Road, Palo Alto, California ("the Property") and setting the matter for

6  further hearing on March 18, 2010.

7      Defendants thereafter rescheduled their scheduled sale of the Property to March 22, 2010,

8  one day after the TRO issued by the state court would expire by operation of law, and then

9  removed the action to this Court on March 12, 2010, six days prior to the hearing that had been

10  scheduled by the state court.  On March 18, 2010, Plaintiff filed an application for a TRO in this

11  Court, and Defendants filed opposition papers.  In light of the state court's order, this Court

12  scheduled a hearing on Plaintiff's motion for injunctive relief and issued its own TRO restraining

13  Defendants from proceeding with any sale or otherwise transferring ownership of the Property

14  pending the hearing and further order of the Court.  The Court subsequently referred the parties

15  to Magistrate Judge Lloyd for a settlement conference.  Because of scheduling conflicts the Court

16  then directed the parties to private mediation.  Order re Mediation at 2 (noting that Wachovia

17  consented to pay all fees and costs billed by JAMS).  The parties returned for a second hearing on

18  the instant motion on April 16, 2010.  Based on the parties statements at that hearing, the Court

19  again directed the parties to a settlement conference with Magistrate Judge Lloyd, which was

20  unsuccessful.  Having considered Plaintiff's application and Defendants' opposition thereto and

21  the oral arguments presented at the hearing on May 7, 2010 and for the reasons discussed below,

22  the motion for a preliminary injunction will be denied.[2]

23

24      [2] On April 22, 2010, Wachovia moved for leave to supplement its briefing in opposition
    to Plaintiff's motion for a preliminary injunction.  Plaintiff opposed the motion.  The Court
25  determined that Wachovia had not articulated its newly alleged unclean hands argument or
    otherwise shown cause to supplement its briefing and denied the motion for leave.  On May 6,
26  less than twenty-four hours before the third scheduled hearing on the instant motion, Plaintiff
    submitted a supplemental brief and request for judicial notice without seeking leave of Court.
27  Plaintiff did not provide an explanation for the late filing.  The Court reviewed the late filing to
28  determine whether or not Plaintiff had raised arguments or presented facts that could not have

2

**B. Factual Background**

On November 17, 2006, Plaintiff obtained a $1.62 million loan (the "Loan") from Defendant World Saving Bank, FSB ("WSB").  The loan secured a Deed of Trust recorded against the Property.  First Amended Complaint ("FAC") ¶ 10;[3] Declaration of Bonnie Kathleen Ransom ("Ransom Decl."), Exs. 3 (the Note), 4 (Deed of Trust).  Plaintiff alleges that the initial disclosures for the Loan "do not contain the initial [Federal Truth in Lending Act disclosures required." FAC ¶ 75.  However, Defendants submit with their opposition papers a Federal Truth in Lending Disclosure Statement ("TILDS") and Notice of Right to Cancel ("NRC"), acknowledged and signed as received by Plaintiff.  Ransom Decl., Exs. 5 (copy of the TILDS signed by Plaintiff), 6 (copy of the NRC signed by Plaintiff).

Plaintiff also alleges that the "terms of the finance transaction with World Savings are not clear or conspicuous..." FAC. ¶ 14.  However, as Defendants assert in their opposition papers:

> Plaintiff <u>acknowledged receipt of, by signing,</u> (i) the Loan Program Disclosure which informed her that the interest rate can change and how the new interest rate is calculated. ([Ransom Decl.] Exh. 7 [Loan Program Disclosure Pick-A-Payment Loan]); (ii) the Deferred Interest Acknowledgment which informed her that she could pick the payment that she wanted to make but if the amount that she picked was insufficient to cover the principal and accrued interest, then that deferred interest would be added onto her Loan's balance. ([*Id.,*] Exh. 8 [Deferred Interest Acknowledgment]); (iii) Plaintiff then picked her monthly payment of approximately $6,000. ([*Id.,*] Exh. 9)[(electing to make an initial monthly payment amount of $5,987.84)]; and, (iv) the Prepayment Feature Acknowledgment which informed her that for the first year only, a prepayment fee would apply if she prepaid more than $5,000 in any month. ([*id.,*] Exh.10 [Prepayment Feature Acknowledgment]]).

Opp. at 2.

Plaintiff claims that "[s]ometime before November 2008, Defendant Wachovia Mortgage Corporation...substituted as beneficiary and loan servicer in place of World Savings" without

_____

been asserted previously and concluded that it did not.  Accordingly, the Court has not considered Plaintiff's supplemental brief or request for judicial notice in deciding the instant motion.

[3]  On March 25, 2010, Plaintiff filed a second amended complaint ("SAC").  Because Plaintiff's motion for a preliminary injunction was based upon the FAC, this order is as well.  Moreover, the new facts alleged by Plaintiff in the SAC would not alter the determination of the instant motion.

1   providing Plaintiff with proper notice.  FAC ¶ 29.  However, Defendants present evidence that

2   Wachovia did not substitute WSB as beneficiary but rather that WSB changed its name to

3   Wachovia.  Defendants' Request for Judicial Notice ("RJN"), Ex. 1 (Letter from the Office of

4   Thrift Supervision in the Department of Treasury indicating that WSB's name change to

5   Wachovia would be effective December 31, 2007).[4]

6        In April 2008, a Notice of Default was recorded against the Property by Golden West

7   Savings Association Service Company ("GWS").  Ransom Decl., Ex. 11 ("Notice of Default").

8   On November 4, 2008, GWS recorded a Notice of Trustee's Sale.  *Id.* Ex. 12 ("First Notice of

9   Trustee's Sale").  The first Notice of Trustee's Sale reflects a total amount owing of

10  approximately $1.85 million. *Id.* ¶ 2.  In November 2008, Plaintiff paid $80,000 to Wachovia.

11  Plaintiff contends that this payment formally reinstated the loan.  Plaintiff Ex. C (November 19,

12  2008 letter written by Plaintiff and Plaintiff's husband Timothy Gens to Wachovia) (stating that

13  "[i]n exchange for the presentation of the $80,000 in certified funds, the default/foreclosure is to

14  be fully cured/reinstated and the loan will be modified.  Wachovia will stop the trustee's sale on

15  the identified property currently scheduled for Friday November 21, 2008 in San Jose.  If this is

16  not our agreement, please let us know before cashing these funds.")  Defendants argue that the

17  $80,000 payment only postponed the trustee's sale, that Plaintiff still was in arrears in the

18  amounts of $50,738.38, and that the payment did not lead to full reinstatement of the loan.

19  Ransom Decl., Ex. 13 (Forbearance Plan Agreement sent by Wachovia and signed by Plaintiff)

20  (stating that "[i]n exchange for receipt of this signed agreement and your non-refundable

21  payment of $80,000.00...on or before 11/19/2008, Wachovia Mortgage will agree to forbear

22  foreclosure activities on [your] loan until 12/19/2008...If, after receipt of this signed agreement

23  and the $80,000.00 payment, the above referenced loan is not brought current or paid in full on or

24  before 12/19/2008, Wachovia Mortgage will pursue or continue the remedies available to it as

25  _____

26      [4]  The letter issued by the Office of Thrift Supervision, Department of the Treasury,
     approving WSB's request to "amend the savings bank's charter and bylaws [and] to change its
27   name to Wachovia Mortgage, FSB...", RJN, Ex. 1, will be judicially noticed as it "is capable of
     accurate and ready determination by resort to sources whose accuracy cannot reasonably be
28   questioned."  Fed. R. Evid. 201(b)(2).

Case Number CV10-01073 JF (HRL)
ORDER DENYING PRELIMINARY INJUNCTION
(JFLC1)

1  stated in your Note and Security Instrument.")

2      On January 16, 2009, a Substitution of Trustee was recorded and mailed to Plaintiff by

3  certified mail, substituting Cal-Western as the trustee.  Declaration of Jennifer Victa ("Victa

4  Decl."), Ex. 1 (Recorded Substitution of Trustee), Ex. 2 (Affidavit of Mailing).  It is undisputed

5  that Defendants did not provide Plaintiff with a second Notice of Default after the forbearance

6  agreement was signed in November 2008.  On February 19, 2010, a second Notice of Trustee's

7  Sale was recorded noticing a sale for March 11, 2010.  RJN, Ex. 2 (Notice of Trustee's Sale

8  Recorded on February 19, 2010).

9      A dispute exists as to when the Notice of Sale was posted on Plaintiff's property.

10  Plaintiff contends that the notice was not posted until February 22, 2010.  Declaration of Julia

11  Gens ¶ 1 (stating that when she left the Property at 10:30 A.M. on February 22 there was nothing

12  affixed to the door and that when she returned at 11:00 A.M. a Notice of Trustee's Sale had been

13  posted); Declaration of Timothy Gens ¶ 1 (asserting that his daughter, Julia Gens, drew his

14  attention to a Notice of Trustee's Sale that had been posted on the door of the house on February

15  22); Declaration of Laura Gens ¶ 1 (claiming that when she left for work on February 22 there

16  was nothing posted on the front door of the Property and that when she returned from work her

17  daughter informed her that a Notice of Trustee's Sale had been posted that morning).  Defendants

18  assert that a Certificate of Posting on file with Cal-Western, which was executed under penalty of

19  perjury, was posted on February 19.  Victa Decl., Ex. 4 (Certificate of Posting).  Defendants also

20  claim that Cal-Western's records reflect that the Notice of Trustee's Sale was mailed to Plaintiff

21  on February 19, 2010.  *Id.,* Ex. 3 (Affidavit of Mailing Notice of Trustee's Sale).

22                                **II. LEGAL STANDARD**

23      "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

24  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

25  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

26  *Natural Res. Def. Council, Inc.,* --- U.S. ----, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).   The

27  Ninth Circuit, following the Supreme Court's holding in *Winter*, has since held that, "[t]o the

28  extent that our cases have suggested a lesser standard, they are no longer controlling, or even

Case Number CV10-01073 JF (HRL)
ORDER DENYING PRELIMINARY INJUNCTION
(JFLC1)

1  viable." *Stormans, Inc. v Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting *Am. Trucking*
2  *Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009) (footnote omitted).

3                                    **III. DISCUSSION**

4          The disposition of the instant motion turns on an assessment of Plaintiff's likelihood of
5  success on the merits.  *Stormans, Inc.*, 586 F.3d at 1127.  Plaintiff bases her argument on errors
6  allegedly committed by Defendants during the foreclosure process**.**  Memorandum in Support of
7  Ex Parte Application at 3 (stating "[w]e will leave the litany of errors in loan servicing to the first
8  amended complaint that has been filed by Plaintiff.  Instead, the focus of this ex parte application
9  is on the errors in the foreclosure process.  Errors which must prohibit a Trustee's Sale until the
10  issues raised by Plaintiff can be heard and adjudicated.") However, Plaintiff's argument is not
11  supported by the record.

12          **A. Foreclosure process related claims**

13                  **1. Possession of the Note**

14          Plaintiff first contends that Defendants, in general, cannot "enforce the instrument as a
15  person not in possession of the instrument, [the note], pursuant to UCC § 3-309 or UCC § 3-
16  418(d)." P. Mot. at 4.  However, it is well established that under California law, possession of the
17  original note is not a prerequisite to foreclosure.  *Nool v. HomEQ Servicing*, 653 F.Supp.2d 1047,
18  1053 (E.D. Cal. 2009).  "Non-judicial foreclosure under deeds of trust is governed by California
19  Civil Code section 2924, et seq. Section 2924(a)(1) provides that a trustee, mortgagee or
20  beneficiary or any of their authorized agents may conduct the foreclosure process. California
21  courts have held that the Civil Code Provisions cover every aspect of the foreclosure process, and
22  are intended to be exhaustive.  *Id.* (citations and quotation marks omitted).  "There is no
23  requirement that the party initiating foreclosure be in possession of the original note." *Id.,* citing
24  *Candelo v. NDex West, LLC,* No. CV F 08-1916 LJO DLB, 2008 WL 5382259, at *4 (E.D.Cal.
25  Dec. 23, 2008); *see also Putkkuri v. ReconTrust Co.,* No. 08cv1919 WQH (AJB), 2009 WL
26  32567, at *2 (S.D. Cal. Jan. 5, 2009) (stating that "[p]ursuant to section 2924(a)(1) of the
27  California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure
28  process. Cal. Civ.Code § 2924(a). Production of the original note is not required to proceed with

                                        6

1  a non-judicial foreclosure.").  Moreover, Defendants have demonstrated that the Loan was not

2  transferred, and that WSB simply changed its name to Wachovia.  RJN Ex. 1.

3          **2. Whether the note is in default**

4          Plaintiff next argues that foreclosure would be unlawful because the Note is not in

5  default.  However, the evidence on the record suggests otherwise.  In April 2008, a Notice of

6  Default was recorded against the Property by Golden West Savings Association Service

7  Company ("GWS").  Ransom Decl., Ex. 11 ("Notice of Default"). On November 4, 2008, GWS

8  recorded a Notice of Trustee's Sale.  *Id.* Ex. 12 ("First Notice of Trustee's Sale").  The first

9  Notice of Trustee's Sale reflects a total debt owing of approximately $1.85 million. *Id.* ¶ 2.

10          Plaintiff contends that her payment of $80,000 to Wachovia formally reinstated the loan.

11  She points to the letter signed by herself and her husband, Timothy Gens, stating "[i]n exchange

12  for the presentation of the $80,000 in certified funds, the default/foreclosure is to be fully

13  cured/reinstated and the loan will be modified.  Wachovia will stop the trustee's sale on the

14  identified property currently scheduled for Friday November 21, 2008 in San Jose.  If this is not

15  our agreement, please let us know before cashing these funds."   Plaintiff Ex. C.[5]  However,

16  Plaintiff offers no evidence that this letter actually was transmitted or received, such as a fax time

17  stamp or certificate of delivery.

18          Moreover, on the same day, Plaintiff signed and faxed to Wachovia the Forbearance Plan

19  Agreement ("the Agreement").  Ransom Decl. Ex. 12. That Agreement states explicitly that:

20        In exchange for receipt of this signed agreement and your non-refundable payment of $80,000.00 in certified funds (cashier's check, money order or wire transfer) on

21        or before 11/19/2008, Wachovia Mortgage will agree to *forbear foreclosure* activities on loan 0044602498 *until 12/19/2008.* For the duration of this

22        agreement, the loan may *remain in foreclosure status...If, after receipt of this signed agreement and the $80,000 payment*, the above reference loan *is not*

23

24        [5]  The November 19, 2008 letter also contains initials.  Plaintiff contends that the initials

25  are those of a Wachovia employee, reflecting Defendants acceptance of the terms of the letter.

26  However, the "initials" are indecipherable, and there is no indication as to when or by whom the initials were affixed.  Moreover, if the Court were to accept Plaintiff's assertion that the initials

27  are those of a Wachovia employee, it is entirely unclear what the initials were intended to represent – they could have confirmed mere receipt of the letter as distinguished from acceptance

28  of its terms.

7

*brought current* or paid in full on or before 12/19/2008, Wachovia Mortgage will *pursue or continue the remedies* available to it as stated in your Note and Security Instrument.

*Id.*, Ex. 13 (emphasis added).

This signed and dated Agreement makes clear that the $80,000 payment functioned only to postpone the trustee's sale to December 19, 2008 and that Wachovia would resume foreclosure proceedings if the loan was not brought current *after* the $80,000 payment was made. *Id.* Plaintiff offers no evidence that she made any payments on the loan after November 2008 and indeed she concedes that she stopped making payments at that point. Defendants assert that at the time Plaintiff made the $80,000 payment, arrearage on the Loan was $130,738.38 – leaving a remaining arrearage of $50,738.38. Defendants point out that between January 28, 2009 and November 25, 2009, Wachovia's parent entity – Wells Fargo Bank, N.A. – voluntarily froze foreclosure. Random Decl. ¶ 4, *see also id.* ¶ 5-6, Ex. 2. (Moreover, Defendants assert that during this time "Wachovia had to advance $6,600 for hazard insurance on April 30, 2009 and $39,721.82 for property taxes and $7,554 in tax penalties on March 11, 2010...[and that] the interest in arears owing on the Loan [currently] is $153,937.16.").

While accepting payment of an amount in default precludes foreclosure, "if the lien has not be extinguished and the debt is in default, the lender may institute nonjudicial foreclosure proceedings." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440 (Cal.App. 2003). "The preponderance of authority seems to be to the effect that acceptance of a partial payment after declaration of acceleration does not preclude the completion of a pending foreclosure." *Bisno v. Sax*, 175 Cal.App.2d 714, 724 (Cal.App. 1960). Here, Plaintiff has failed to show from admissible evidence that she is likely to succeed in proving that she extinguished the lien when she made the $80,000 payment. To the contrary, it appears that the Defendants likely will be able to demonstrate that the payment was only partial and arrearage of approximately $50,000 remained.[6]

---

[6] In addition, it is significant for purposes of equitable relief that Plaintiff has refused to make her monthly mortgage payments on the loan since making the partial payment of $80,000 in November 2008.

8

**3. The Unpaid balance on the Notice of Trustee's Sale is Incorrect**

"The notice of sale shall contain a statement of the total amount of the unpaid balance of the obligation secured by the property to be sold and reasonably estimated costs, expenses, advances at the time of the initial publication...provided, that the trustee shall incur no liability for any good faith error in stating the proper amount..." Cal. Civ. Code. § 2924f(b)(1).[7] Plaintiff contends that Defendants failed to comply with this provision by stating an incorrect unpaid balance and that the foreclosure sale thus must be enjoined. Motion at 8-9 (arguing that the unpaid balance indicated on the Notice of Trustee's Sale is $1,987,747.53, when the principal value of the loan made in November 2006 was $1,620,000 and a difference of $367,747 could not have incurred in fourteen months). Plaintiff also argues that the amount of the minimum monthly payments was $6,346.92 and that in October 2009 it rose to $7,438.65. Plaintiff Ex. E. Based on this assertion, Plaintiff contends that the maximum amount owed could not be more than approximately $98,000.

Defendants first observe that thirty-six months have passed since the origination of the loan, not fourteen months.[8] Second, Defendants note that the debt recited in the first Notice of Trustee's sale was $1.85 million and that the $1.95 million debt reported in the second Notice of Trustee's sale includes both the monthly charges Plaintiff cites, and fourteen months of arrears, taxes, insurance, and foreclosure costs. Opp. at 6, citing Ransom Decl. ¶ 5. Defendants also submit an "Itemized Payoff Demand for this Loan" and identify the advances Wachovia had to make for hazard insurance ($6,600), property taxes ($39,721.82), and tax penalties ($7,554). Ransom Decl. ¶ 5, Ex. 2 ("Itemized Payoff Demand") (identifying the following itemized subtotals: Principal Balance ($1,695,643.07); Interest ($153,937.16); Corporate Advance Balance ($44,854.88); Escrow Advance Balance ($17,600.00); Recon/Recording Fee ($63.00); Total

---

[7] Plaintiff mistakenly cites Cal. Civ. Code § 2324f. The Court will proceed on the assumption that Plaintiff intended to cite Section 2924f(b), given that it contains the language cited in support of Plaintiff's argument concerning the statement of the unpaid balance.

[8] Defendants' reference to thirty-six months is based upon the date their opposition papers were filed, not the date of this order.

9

1  required to pay loan in full ($1,912,098.11); Inspection Fee ($170.00) – Total to pay Loan and

2  Related Wachovia Mortgage Charges ($1,912,268.11)).  Given Defendants' explanation of the

3  additional costs and Plaintiff's failure to account for these charges, the Court concludes that

4  Plaintiff has not shown that she is likely to succeed on this claim.

5                     **4. Alleged Posting Error**

6          California Civil Code § 2924f(b) requires that "[a] copy of the notice of sale shall also be

7  posted in a conspicuous place on the property to be sold at least 20 days before the date of the

8  sale, where possible and where not restricted for any reason."  The parties dispute whether the

9  Notice of Trustee's Sale was posted in accordance with Section 2324f(b).  Plaintiff submits three

10  declarations – one by herself, one by her husband, and one by her daughter – asserting that the

11  Notice was not posted until the morning of February 22 for a sale scheduled on March 11.

12  Defendants point to a Certificate of Posting, executed under penalty of perjury, attesting that the

13  Notice was posted on February 19, which would comply with the twenty-day requirement.  Victa

14  Decl., Ex. 4 (Certificate of Posting).[9]

15          Even accepting Plaintiff's claim that the Notice of Default was not posted until February

16  22, late provision of notice is not sufficient to forestall foreclosure given the other facts in this

17  case.  A technical error is not fatal unless prejudice, which Plaintiff has neither alleged nor

18  demonstrated is shown.  Courts have "rejected claims of deficient notice where no prejudice was

19  suffered as the result of a procedural irregularity." *Reynoso v. Paul Financial, LLC*, No. 09-3225

20  SC, 2009 WL 3833298, at *4 (N.D. Cal. Nov. 16, 2009), quoting *Pantoja v. Countrywide Home*

21  *Loans, Inc.,* No. 09- 1615, 2009 WL 2423703, at *6-7 (N.D. Cal. July 9, 2009); *see also Lehner*

22  *v. United States*, 685 F.2d 1187, 1190-91 (9th Cir.1982) (rejecting due process claim based on

23  failure to provide written notice of foreclosure sale where plaintiff had actual notice); *Knapp v.*

24  *Doherty,* 123 Cal.App.4th 76, 93-94, 20 Cal.Rptr.3d 1 (Ct.App.2004) (rejecting claim based on

25  ────────────────

26          [9]  Plaintiff does not contest that Defendant Cal-Western mailed her the Notice of

27  Trustee's Sale on February 19, 2010, by certified mail, in compliance with the Cal. Civ. Code §
    2924b(b)(2).  Victa Decl., Ex. 3 (Affidavit of Mailing).  Nor does she allege that she did not

28  receive such notice by mail.

                                     10

1  deviation from foreclosure notice requirement where "[t]here was no prejudicial procedural

2  irregularity").  Particularly in light of the fact that the sale itself has now been postponed several

3  times and is now scheduled for May 24, 2010 Plaintiff cannot demonstrate that she suffered

4  prejudice from Defendants' alleged error.

5              **5. A second notice of default is not required**

6        Plaintiff next contends that the Court should grant a preliminary injunction because

7  Defendants did not provide a second notice of default after the Forbearance Plan Agreement was

8  signed and Plaintiff made the $80,000 payment.  However, in light of the Court's conclusion that

9  the Loan was not reinstated in November 2008, a second notice of default is not required.  It is

10 true that a second notice of sale, as distinguished from a second notice of default, is required

11 when the "sale proceedings are postponed for a period or periods totaling more than 365 days."

12 Cal. Civ. Code. § 2924g(c)(2).  Here, it is undisputed that Defendants mailed a Notice of

13 Trustee's Sale on February 19 pursuant to Cal Civ. Code § 2924b and that a Notice of Trustee's

14 Sale was posted on the front door of the Property pursuant to Cal. Civ. Code § 2924f.  Victa

15 Decl., Ex. 3 (Affidavit of Mailing); Ex. 4 (Certificate of Posting).  Accordingly, Plaintiff cannot

16 show a likelihood of success on this aspect of her claims.

17             **6. Substitution of Trustee**

18       Plaintiff argues that Defendants failed to comply with Cal Civ. Code § 2934a by not

19 notifying her of the substitution of trustee.  Section 2934a requires that such notice be provided

20 by certified mail.  Defendants have submitted a copy of the Affidavit of Mailing of the recorded

21 substitution, stating that Adam Spera, "at the request of Cal-Western Reconveyance Corporation

22 on January 14, 2009, [] deposited in the United States mail a copy of the attached document [the

23 recorded Substitution of Trustee], in separate sealed envelopes, Certified Mail, postage

24 prepaid..."  Victa Decl., Ex. 2 (Affidavit of Mailing).  Accordingly, the evidence in the record

25 supports a finding that Defendants complied with Section 2934a.

26            **7. Compliance with Cal. Civ. Code § 2923.53**

27       Plaintiff contends that she is likely to succeed on her claim in light of the fact that

28 Wachovia is not exempt from Cal. Civ. Code § 2923.53 because it is not a California

11

Case Number CV10-01073 JF (HRL)
ORDER DENYING PRELIMINARY INJUNCTION
(JFLC1)

1  corporation.  Cal. Civ. Code § 2923.53 (governing loan modification programs and exemption

2  from notice of sale provisions).  However, Defendants submit a "List of Licensees that have

3  received an exemption from Civil Code Section § 2923.52(a)" issued by the California

4  Department of Corporations that identifies Wachovia as an exempt entity.  RJN, Ex. 3.[10]

5  Accordingly, Plaintiff has failed to demonstrate a likelihood of prevailing as to this issue.

6           **8. Tender**

7           "Under California law, a defaulted borrower 'is required to allege tender of the amount

8  of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in

9  the sale procedure.'" *Bouyer v. IndyMac Federal Bank*, No. C-08-05582 EDL, 2009 WL

10  1765668, at *2 (N.D. Cal. June 18, 2009, quoting *Abdallah v. United Savings Bank,* 43

11  Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996).  "An action to set aside a foreclosure sale,

12  unaccompanied by an offer to redeem, does not state a cause of action which a court of equity

13  recognizes."  *Id.,* citing *Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 117-18, 92

14  Cal.Rptr. 851 (1971).  Plaintiff has neither pled nor offered any evidence of a tender to pay her

15  debt.[11]

16           **B. Loan origination related claims**

17           Plaintiff does not address the remainder of her alleged claims for relief in her

18  memorandum in support of injunctive relief.  Defendants assert that each of Plaintiff's claims is

19  time-barred.  The Loan was executed in November 2006, while the instant action was not filed

20  until February 26, 2010.  Plaintiff's federal claims thus appear to be time-barred.[12]  *See Miguel v.*

21

22      [10]  The Court takes judicial notice of Exhibit 3, "List of Licensees that have received an
23  exemption from Civil Code Section § 2923.52(a)," issued by the California Department of
24  Corporations, as it is "capable of accurate and ready determination by resort to sources whose
    accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

25      [11]  At the hearing on May 7, 2010 Plaintiff informed the Court that she believed she
26  should not have to make any payment in return for a release from the loan on her home.

27      [12]  However, Defendants' argument that each of Plaintiff's state law claims is time-barred
28  does not appear to be sound.  While Defendants assert that the statute of limitations for fraud or
    mistake is three years, they also concede that the California Civil Code articulates a "four year

12

1  *Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (the Ninth Circuit has recognized

2  that "§ 1635 is a statute of repose, depriving the courts of subject matter jurisdiction when a §

3  1635 claim is brought outside the three year limitation period.");  *Vrabel v. JP Morgan Chase*

4  *Bank*, N.A. No. C-C-09-1278 MMC, 2009 WL 2421856, at *1 (N.D. Cal. Aug. 6, 2009)

5  (applying "the longest statute of limitations available under RESPA," the three-year statute of

6  limitations, Plaintiff's RESPA disclosure claims are time-barred.); 15 U.S.C. § 1640(e)

7  (providing that the limitations period is one year for damages claims under TILA).  Moreover,

8  only the TILA rescission action, for which the limitations period cannot be tolled as it is a statute

9  of repose, could provide Plaintiff with the remedy she seeks - an injunction prohibiting

10  foreclosure on the Property.

## IV. ORDER

12      Plaintiff's motion for a preliminary injunction is DENIED.

13

14  **IT IS SO ORDERED.**

15  DATED: May 12, 2010

16

17

18                                 JEREMY FOGEL
                               United States District Judge

19

20

21

22 _____

23  catch all limitations period." Opp. at 10, citing Cal. Civ. Proc. Code § 343.  In addition, the
statute of limitations for many of Plaintiff's other state law claims is four years. *See* Cal. Civ.

24  Proc. Code § 337 (breach of contract limitations period is four years); Cal. Civ. Proc. Code § 343
(breach of fiduciary duty is four years); *Osei v. Countrywide Home Loans*, No. CIV. S-09-1981

25  LKK/JFM, — F.Supp.2d—, 2010 WL 727831, at *12 (E.D. Cal. Mar. 3, 2010), citing *Love v.*

26  *Fire Insurance Exchange*, 221 Cal.App.3d 1136, 1144, 271 Cal.Rptr. 246 (1990) (holding that
[a] claim for the covenant of good faith and fair dealing has a...statute of limitations [of] four

27  years if it sounds in contract.); Cal. Bus & Prof. Code § 17208 (A claim for relief brought
pursuant to the UCL must be "commenced within four years after the cause of action accrued.").

28  Plaintiff filed the instant action within four years of the time the Loan was executed.

1

2     A copy of this order has been served upon the following persons:

3     Laura Gens
      4141 Old Trace Road
      Palo Alto, CA 94306
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                14